We'll hear from Marks v. Hochhauser. Good morning. Good morning, Your Honors. So, you've reserved two minutes for rebuttal. Yes, I have, Your Honor. I'll give you a two-minute warning when you've hit six minutes. Thank you very much. Okay. May it please the Court, my name is Kirsten Tramek, and I represent the appellant Ross Edward Marks in this case. Before I begin my points of argument, would the Court like a brief recitation of the facts in this matter? We're prepared. Thank you, Your Honors. As to my first point, which is that the district court erred when holding that the Hague Convention was in effect was not in effect, excuse me, in effect on the date of the wrongful removal or retention of the subject children in this case because the convention entered into force in the United States on January 1st, 1988, and in Thailand on November 1st, 2002, which was well before the wrongful removal and retention in this case. The Court incorrectly held that the convention became effective as between the United States and Thailand on April 1st, 2016, resulting in its erroneous holding that Thailand was therefore not a contracting state. Isn't that the position that the State Department takes? The State Department offers a liberal interpretation of the term entered into force, and so— It says that there might be another, but isn't the position the State Department is taking is that the key moment is access, is when this access is taken, and that the argument would be made that it really doesn't make much sense to give way. Why is that agreement important if it just comes into play when each of the parties adopts it? That's precisely the argument that I'm making, is that when each state adopts the convention, that is the triggering point. I know that's your argument, but then what is the function of this additional step that most countries seem to say is the crucial step, and that the State Department seems to adopt, too? So, while we acknowledge that the State Department has applied a strict interpretation, actually asserts that the State Department guidance also offers a liberal interpretation, that states and courts are also permitted to apply, in this case, where appropriate. And in this case, it's our position that it is appropriate that if the court were to hold that April 1st, 2016 was the triggering point, that the liberal interpretation be applied in this matter. How do other countries look at it? Doesn't the House of Lords, for instance, look at it in the way contrary to yours, and haven't we suggested, suggested, in Zuterclough's case, I can't pronounce well, in the Second Circuit the same way? Shouldn't we, in interpreting a treaty of this sort, interpret it the way it is generally interpreted? Well, Your Honor, I would go back to the text. So, when we're looking at statutes and conventions and treaties, the interpretation of such begins with its text. And if we look at Article 35 of the Hague Convention. The text is acceptance of the accession. When did that happen here? So, the acceptance of the accession concededly did not happen until April 1st, 2016. That's literally the language of Article 38. Why doesn't that control? Sorry, Your Honor. Why doesn't that control? Because if you look at Article 35, which is also supported by the first provision in Article 38, Article 39, as well as Article 43, it says very well that the convention applies once the convention has been entered into force in those states, and not as between those two states. So, if you look at Article 38, it does say that the convention shall enter into force for a state acceding to it on the first day of the third calendar month after the deposit of its instrument of accession. Article 39 further supports our position and says that any state may at any time of signature, ratification, acceptance, approval, or accession declare that the convention shall extend to all territories for an international relations of which it is responsible or to one or more of them. Such declaration shall take effect at the time the convention enters into force for that state. So, that particular state, not in reference to others. Perhaps you should move on to the other issue. Sure, Your Honor. Your Honor, our second argument is that even if the convention was entered into force on April 1, 2016, as the district court ruled, it erred in holding that the retention was a singular act. So, the wrongful retention began, as we both agree, on October 7, 2015, which was the date that Ms. Hochhauser sent an email to my client and unilaterally decided that she was remaining in New York despite the fact that she had returned tickets to Thailand with the children and despite the fact that she duped my client into... Again, again, I think one could read it either way, but aren't we, shouldn't we give weight to the fact that Austria, that the House of Lords, that the reporter Perez Vera all say that it is a singular act rather than a continuous thing? When you have an international convention, isn't it odd if one state reads it differently from the way the other countries? I would admit that it would be odd, Your Honor. However, I do know that the Perez Vera report also does not set forth a preclusion for a state to do as such, and that applying a liberal interpretation in cases where appropriate is also an alternative method, and we're asking that the court apply that here. It's also a practical problem with your client's position, and that is, in essence, there's no time limit then if it's deemed to be continuing. So, with respect to the time limit, we would suggest that for the Article 12 well settled defense to be triggered, that would occur on the date that Ms. Hockhauser wrote the email and the date that my client, in accordance with case law, should have known, thank you, Your Honor, should have known that she was no longer returning. However, if it was not in effect until April 1st, 2016, then the retention is an ongoing event, because she's still retaining the children in New York, despite the fact that my client has joint legal custody and access every weekend. My client hasn't seen his children but for 21 days since they left, and that was because he came here to visit them. And he has his whole life there. The children only knew Asia. They were born in Hong Kong. They then moved to Thailand. And again, my client has not seen his children, despite the fact that he has custodial rights. And in this matter, that's why the continuous liberal interpretation of the continuous retention is appropriate in this matter. Ermini v. Vitori, which is a southern district case, and although not binding on this court, the petitioner had rights of custody when the retention of the children in the United States began. And noted that the respondent was retaining, continuously, the children in the United States in violation of the petitioner's custody rights under Italian law. And so in that case, they got to the merits of that case. And the court did hear affirmative defenses from the respondent in that case. And we're asking that the case in this matter be remitted and remanded for an evidentiary hearing in this matter. Thank you, your honors, for your time. Thank you. We'll hear from the other side. Good morning, your honors. Richard Min for Appelli, Karen Hochheiser. I'd like to address first retention. I think it's clear when looking at this decisions of the sister signatories, case law from around the United States, the Perez-Vera report, that retention is a singular act, not an ongoing act. Judge Karras, and I would concur, applied principles of statutory construction to assert that retention can only be interpreted as a single act. The Fourth Circuit, in the case of White v. White, was very illustrative on this point that if retention were an ongoing act, then a person who did not have custody rights at the time of the retention could then seek to attain custody rights at some point in the future. And as your honor rightly pointed out, even five years in the future, if a person attained custody rights, they could then go back to the country and assert that there was a wrongful retention at that point. Retention literally could mean just continuing. I mean, is there any guidance in the text of the Convention on this issue on how we should interpret retention? Well, I think Article 3, which also goes to the issue of custody rights and access rights, but custody rights, Article 3 points out that, of the Convention, points out that custody rights need to be determined at the point immediately before retention. And I think that illustrates that retention should be a singular act. But even if retention were a singular act rather than a continuous one, couldn't one argue that retention occurred at that, doesn't matter in this case, but just at that point which you gave us as the horrible, that when custody rights were given, then the singular act of retention was. So that the horrible could apply just as much if retention were a singular act unless it had to be one single singular act rather than a singular act now and then one five years later. And I understand your honor's point and I would respond in two different ways. First, this decision was based on a motion to dismiss and in that process we assume the facts as stated in the petition. Appellant in this case has only alleged or alleged in his petition that the retention occurred on October 7th. So in this case it doesn't matter because unless it is a continuous act, the retention occurred before April 16th and that's fine. But your argument against continuous was based on a horrible that applies just as much to single act. So why shouldn't we, reading retention as continuous, which is a possible reading, read it that way except for the fact that other countries haven't? Well, the language in Article 3 I think is clear where it says the retention is to be considered wrongful where and then it gives examples of when it's considered wrongful. But the use of the word the retention I think denotes the fact that it can only occur once, not on a continuous basis, not multiple times, but only once. And it's at that moment the courts must determine whether it's wrongful or rightful or illegal or not illegal. So the act of retention occurs one moment in time. It's when courts have said the other parent should have known the child was not going to be returned. The parent cannot know multiple times that the child is not going to be returned. The child knows once and for all the child is not going to be returned, and that's when we measure whether retention was wrongful or not. Your Honor, I would move on to Article 35 and 38. And it's clear that when we are interpreting treaties, you can look at the language, of course, and you should start with the language, but if there's some ambiguity, which I think in this case it's clear that there's a lot of ambiguity, you can look at the intent, the drafting history, the negotiation history, and the post-ratification understanding of signatory nations. In this case, it's clear that the British courts have defined the treaty to apply, retentions to apply, after the two countries have both ratified the convention and signed off between each other. As well, the State Department in this case agrees with the British courts' interpretation, and in 1986, two years before the United States Senate ratified the convention, gave their interpretation of the treaty. And in their interpretation, they stated that the treaty applies as between two countries. Judge Karras, in his decision, also noted that if you went on the State Department's website, you further got explanation that it only applies when the treaty is, in effect, between the two countries. Now, Article 38 goes into how contracting states accept the treaty, and in this case, even appellant acknowledges that that occurred on April 1, 2016. Paragraph 2 of the petition clearly states that the treaty went into effect between the United States and Thailand on April 1, 2016. Now, again, the facts of the petition are the basis of this motion to dismiss. As Your Honor also pointed out, this circuit, in the case of Sertgar v. Fair, also acknowledged that the removal and the retention must occur after the convention is, in effect, between the two countries. In that case, the removal occurred three weeks after the treaty was in effect between the United States and Singapore, and it noted that in footnote 5. Lastly, I want to go to an issue that Judge Karras felt that he did not need to comment on, but that's one of custody and access rights, and it was brought up in appellant's brief. As I noted in Article 3, custody rights need to be determined immediately before the date of retention. In this case, appellant acknowledges that retention occurred on October 7, 2015. Appellant also acknowledges in his petition that appellee had sole custody as of October 7, 2015. So the fact remains that immediately before the alleged retention, appellant acknowledges that he had no custody rights. Therefore, he has no basis to bring forward this petition. That is the third and final argument that I'd like to make. Retention is a single act. The treaty was not in force, in effect, between the two countries, and appellant did not have custody rights at the time of the alleged retention. Thank you, Your Honor. Thank you. We'll hear the rebuttal. Thank you very much, Your Honor. Just a couple of points in response. The appellee seeks to apply a different standard of the word retention than it is traditionally defined. The act of retaining something very well means the possession and the possession of something or someone. So to apply a different standard or a different definition, as is commonly used, it's in contravention of statutory interpretation. With respect to the fact that Article 38 is unambiguous and the fact that entry into force must take place when two countries accede to one another, the Convention is clear, and Article 35 is clear, that it's when the countries have the Convention entered into force in the individual countries and not as between. My adversary brings up the case Surakgar, and in addition to his point, I would just like to add that Surakgar, and I quote, provides that the Convention's remedy of repatriation is designed to preserve the status quo in the child's country of habitual residence and deter parents from crossing international boundaries in search of a more sympathetic court. And I submit to the Court that is precisely what Ms. Hochhauser did in this case. The Convention was adopted for a specific and unequivocal purpose, and that was to ensure that the left-behind parent, Mr. Marks, is able to exercise his or her rights so that one parent could not alienate the other from their children in an attempt to erase them from their lives. And the Convention seeks to serve the rights of my client, and in this matter, if this case remains dismissed and is not gone to an evidentiary hearing, that is precisely what will happen. The District Court erred in determining that the Convention was not in effect, and it also erred when it held that the retention is not continuous. As to the access rights, which is not before this Court, and I did not appeal that because the District Court did not reach that issue, however, I will just briefly address that my client never, ever gave up his parental rights under Thai law, which gives him the ability to determine where the children reside in that country. And as well, he had access rights every weekend. So the fact that he had access rights and he never gave up his parental rights, which under the Convention permits him to determine where the children reside, is in contravention to my adversary's point that he did not have custody and access rights at that time. I thank Your Honors for your time and consideration. Thank you. Will reserve decision. Thank you.